# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| JACKIE REYNOLDS | CIVIL ACTION NO. 09-1077 |
| VS. | SECTION P |
| WARDEN NEWCOMER, ET AL. | CHIEF JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Jackie Reynolds, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 21, 2009. Plaintiff is a pre-trial detainee at the Ouachita Parish Correctional Center (OPCC) and he complains about various circumstances and conditions associated with his confinement at that institution. He has sued OPCC Warden Newcomer and Dy. Rosatta seeking injunctive relief and compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Background*

#### *1. Original Complaint [Doc. 1]*

Plaintiff is in the custody of the Sheriff of Ouachita Parish; he is detained at the OPCC where he awaits trial on unspecified charges. In his original complaint [Doc. 1] he alleged the following claims:

Defendants interfere with attempts by inmates to pursue legal actions through regulations

and practices that obstruct inmates' access to court.  Inmates cannot  work on legal matters in their cells because they lack desks or writing surfaces, the cells are sometimes over crowded, and lighting is insufficient. Defendants inhibit communication among inmates about legal matters and encumber their efforts to have legal papers notarized.  Inmates cannot make copies of legal material and have no access to carbon paper.  Inmates are not allowed full access to the OPCC Law Library and are required to request copies of cases and statutes from the trusties who often disregard such requests.

OPCC does not provide for "grievance boxes" where inmates can complain about corrections staff and thus avoid immediate retaliation.

Incoming and outgoing mail is mishandled. OPCC does not have a handbook or posted rules and regulations concerning mail and employs no appeal procedure to review the decisions of mail clerk, Dy. Rosatta.  Plaintiff was denied several books for no valid security reason, including a book on the History of Celtic Knot Work which was seized because it contained "tattoo patterns" and a Bible because it was packaged in "bubble wrap." On at least one occasion plaintiff was not allowed to weigh outgoing mail to compute postage and he was  not allowed to send certified or overnight mail.

Plaintiff complains of a shortage of guards to supervise the inmates – he reckons that the ratio is one guard for every 100 inmates.  As a result, he argues, inmates are exposed to inmate on inmate violence and extortion. He also complains that the ratio of white and African American inmates subjects members of the "... Caucasian race ... to great amounts of extortion, etc."

Plaintiff complains of the presence of black mold in living areas, eating areas, and shower

2

areas and that food trays are placed too close to the areas where inmates urinate.

Plaintiff complains that the ventilation system is not properly maintained and as a result, great amounts of dust and mold have accumulated.

Plaintiff implies  that inmates with physical or mental disabilities are not treated properly.

Plaintiff complains that the inmates' food is "grossly mishandled" because servers are not required to wear hair nets or gloves. He complains that food is served cold and that inmate servers are not screened for contagious diseases.  He complains that on June 20, 2009, an inmate previously arrested for the intentional exposure of HIV/AIDS was allowed to serve breakfast trays.

Plaintiff argues that upon arrival, all inmates should be medically evaluated. Inmates medically assigned to a lower bunk should be able to rely on corrections officers to enforce the assignment.

Plaintiff implies that staff are not properly trained and supports this allegation by asserting as "fact" that only 20 inmates of the hundreds confined at OPCC are provided their true bunk assignments.

Plaintiff complains that 99% of the inmate population are assigned "ill fitting clothes" which can cause serious medical problems. He complains that oversized trousers can cause the wearer to trip. He also complains that OPCC refuses to supply briefs for inmates, all of whom must wear boxer shorts. Plaintiff also complains that inmates' clothing is not properly washed and are stained when returned.  The current practice of laundering sheets often results in the inmates having nothing to sleep on for a night. He also complains that socks have holes and the towels are not absorbent.

3

Plaintiff complains that he and others have been denied the right to receive religious material such as Bibles, books, and magazines. Plaintiff complains that Warden Newcomer allows Pentecostalists and other Christian "sects" to proselytize inmates in the dormitory's common day room. Finally, plaintiff complains that shortly after his arrival at OPCC, his religious pendant – a gift from his grandfather – was confiscated.

Plaintiff prays for injunctive relief – injunctions directing the defendants to cease the practices complained of above and to direct the defendants to institute suggested reforms. He also prays for compensatory damages for "... emotional, mental distress, as well as pain and suffering..."

### 2. Amended Complaint

Plaintiff was instructed to amend his complaint and to utilize the form provided to prisoners filing civil rights complaints in this Court. On July 21, 2009 plaintiff submitted his amended complaint. He again complains of inadequacies in the OPCC inmate grievance procedures , the law library, the mail system; and conditions of confinement related to overcrowding/under-staffing, health and sanitation issues, food services, classification of inmates, staff training, clothing, and the practice of religion. [Doc. 9]

### Law and Analysis

### 1. Screening

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2

F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be

granted if  it appears that no relief could be granted under any set of facts that could be proven

consistent with the allegations of the complaint. Of course, in making this determination, the

court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given

broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a

constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*,

47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a

plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim

if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has filed an original complaint and an amended complaint and numerous

motions, all of which adequately detail his claims for relief, the evidence supporting those claims, and the relief sought on each claim.  Each fact alleged has been assumed to be true for the purposes of this Report, and, since it appears that plaintiff has adequately set forth his claims for relief, further amendment of the pleadings would serve no useful purpose.

### 2. Access to Courts

Plaintiff complains that the OPCC law library is inadequate and, that prison rules and conditions interfere with his Constitutional right of access to the Courts.  "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has not shown how his – or anyone else's – ability to prepare and transmit legal documents have in any way been denied or inhibited by the inadequacies and policies that he has alleged. Indeed, and with regard to the instant suit, plaintiff has been able to file an 18 page

original complaint [Doc. 1] accompanied by a Motion to Proceed on One Copy [Doc. 3], a

Motion to Appoint Counsel [Doc. 4], a Motion for Protective Order [Doc. 5],  a Motion to

Certify Class Action [Doc. 6], and a Motion to Appoint a Special Master. [Doc. 7]  Thereafter,

plaintiff filed an Amended Complaint [Doc. 9], a Motion to Proceed *In Forma Pauperis* [Doc.

10], a Motion for Service [Doc. 12], a Motion for Supplemental Pleading Ordering Preliminary

Injunction/Protective Order [Doc. 13], an appeal of the undersigned's order denying the various

motions [Doc. 15], a Motion to Consolidate [Doc. 16], a Notice of Appeal of the Magistrate's

Report and Recommendation  [Docs. 15, 18], a Notice of Appeal to the Fifth Circuit [Doc. 21], a

Motion for *In Forma Pauperis* status on appeal [Docs. 23 and 24], and, a Motion to Dismiss

Appeal. [Doc. 29] Clearly, the complained of deficiencies have not inhibited plaintiff in pursuing

the instant litigation concerning the conditions of his confinement.

　　　　In addition, plaintiff is pre-trial detainee awaiting trial.  Plaintiff has not alleged, but it

must be presumed that he has either (a) retained counsel to defend him on the pending charges;

(b) obtained court-appointed counsel due to his indigence; or (3) waived his right to court-

appointed counsel.  In any event, based upon the foregoing, it is clear that plaintiff cannot state a

viable access to court claim with regard to the on-going criminal prosecution. In *William Earl*

*Degrate v. Laymon Godwin*, 84 F.3d 768, 769 (5th Cir.1996) the Fifth Circuit held that the

plaintiff, who had rejected the assistance of his court-appointed attorney "had no constitutional

right to access a law library in preparing the *pro-se* defense of his criminal trial."  Likewise, in

*Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir.1981) the Fifth Circuit held that in the absence of

extraordinary circumstances, a criminal defendant represented by counsel does not have a

constitutional right to file every *pro-se* motion he wants to file in addition to his attorney's

motions.

These holdings are in accord with cases from other federal circuits. See *United States v. Smith*, 907 F.2d 42, 45 (6th Cir.) (the state does not have to provide access to a law library to defendants who wish to represent themselves), *cert. denied*, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 533 (1990); *United States ex rel George v. Lane*, 718 F.2d 226, 233 (7th Cir.1983) (the state was not required to offer a defendant law library access once it offered the defendant assistance of counsel); *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir.1982) (a prisoner's Sixth Amendment right to self-representation does not include a right to conduct research at the government's expense), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983); *Kelsey v. State of Minn*., 622 F.2d 956, 958 (8th Cir.1980) (holding that prisoner's constitutional right of access to courts did not obligate officials to provide him with an adequate law library where alternative means of satisfying access to courts were available); *United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir.1978) (obligation to provide access to the courts was satisfied by offering the defendant the assistance of counsel); *Love v. Summit County*, 776 F.2d 908, 912-13 (10th Cir.1985), *cert. denied* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 25 (1986), (determining pretrial detainee is not entitled to access to a law library if other available means to access the court exist) (quoting *Bounds v. Smith*, 430 U.S. 817, 830, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)).

In other words, offering or providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. See *Lewis v. Casey*, 518 U.S. 343, 350-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (relying on *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. 1491); *Love*, 776 F.2d at 914. Thus, while prisoners like the plaintiff have a right to adequate, effective and meaningful access to the courts, access to a law library is only one of

8

many constitutionally acceptable methods used to assure meaningful access to the courts. See *U.S. v. Taylor*, 183 F.3d 1199 (10th Cir.1999), *cert. denied* by *Taylor v. U.S.*, 528 U.S. 904, 120 S.Ct. 244, 145 L.Ed.2d 205 (1999).

Finally, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. The Court further held that this right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* Plaintiff has not demonstrated prejudice and therefore, even if he could otherwise establish that he was denied access to courts, his claim would be subject to dismissal.

## 2. Grievance Procedure

Plaintiff also complains that the defendants have denied him and his fellow inmates a right to fully participate in an adequate and effective prison grievance procedure. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners

without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

10

Since there is no constitutionally protected right to participate in a prison grievance procedure, plaintiff's grievance claim is also frivolous.

### 3. Mail

Plaintiff complains about the mis-handling of his mail and the denial of a book describing Celtic knots and his Bible.  Interference with legal mail by a prison official may violate an inmate's constitutional right of access to the courts, and/or his First Amendment right to free speech, that is, freedom from unjustified governmental interference with communication. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir.1993).   Inmates have a First Amendment right both to send and receive mail, see *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband. See *Brewer*, 3 F.3d at 821 ("A prisoner's freedom from censorship under the First Amendment ... with regard to his incoming mail is not the equivalent of freedom from inspection or perusal.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

The inspection and censorship of incoming prisoner mail even if it occurs outside of the prisoner's presence, and even if it is in violation of prison regulations does not provide grounds for relief pursuant to §1984.  *Brewer*, 3 F.3d at 825 (5th Cir. 2009) (recognizing that "the violation of [a] prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights" when there is no proof that such tampering was prejudicial to the inmate's access to the courts and when the practice was reasonable related to legitimate penological interests); *Henthorn v. Swinson*, 955 F.2d 351, 353 (5th Cir.1992) (rejecting a complaint concerning the opening of legal mail not

bearing the required "special mail" inscription outside of an inmate's presence); see also *Singletary v. Stadler*, 2001 WL 1131949 (5th Cir.2001) (unpublished *per curiam*) (affirming that "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected"). Stated another way, "Standing alone ... the opening of inmate mail does not state a cognizable constitutional claim." *Henderson v. Johnson*, 201 Fed. Appx. 284, 286 (5th Cir. Oct. 4, 2006) (citing *Brewer*, 3 F.3d 816, 825 (5th Cir.1993); *Jackson v.* Cain, 864 F.2d 1235, 1244 (5th Cir.1989) (holding that "in order to prevent the sending of contraband, prison authorities may open a prisoner's mail for inspection.").

Here, plaintiff does not claim that legal mail was censored; instead, he complains only that he was denied a book on knots and his Bible because in the former instance, the pictures were objectionable, and, in the latter, because the book was improperly packaged.  Such mail regulations do not run afoul of either  the First Amendment or the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 550-551,  99 S.Ct. 1861 (1979). Further, plaintiff has not pointed to any other instances where his mail was censored and standing alone, these allegations are frivolous.

**4.  Conditions of Confinement**

Plaintiff complains of various conditions of confinement.  As noted above, he is a pre-trial detainee and not a convict. It has long been held that "... [t]he State's exercise of its power to hold detainees and prisoners ... brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Hare v. City of Corinth,*

*Miss.*, 74 F.3d 633, 638-39 (5th Cir.1996) (*en banc*) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Thus, a detainee's constitutional rights arise  from "both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* at 639 (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The Due Process Clause of the Fourteenth prohibits the punitive confinement of a pretrial detainee since, by definition, the guilt of a detainee has not yet been adjudicated. See *Bell*, 441 U.S. at 535. Since plaintiff has alleged that he is a pretrial detainee, and since his allegations have been accepted as true for the purposes of this Report, the issue herein is whether or not the complained of acts or omissions of the defendants amounted to a violation of plaintiff's due process rights under the Fourteenth Amendment.

Under Fifth Circuit jurisprudence, in order to determine the standard of analysis for constitutional challenges brought by pretrial detainees under § 1983, courts are directed to first to classify the challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir.1997) (citing *Hare*, 74 F.3d at 644).   In a detainee suit challenging conditions of confinement, the constitutional challenge is to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.  On the other hand,  an "episodic act or omission" case, complains of a particular act or omission of one or more officials, and it focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645. A detainee who complains that an "episodic act or omission" resulted in an unconstitutional violation of a his Fourteenth Amendment rights is required to show that the official's action

13

constituted "deliberate indifference." *Hare*, 74 F.3d at 647-48.

The plaintiff herein attacks the general conditions, practices, rules, or restrictions of pretrial confinement – under-staffing, overcrowding, lack of appropriate training by corrections staff and, general health, clothing and dietary related concerns. Therefore, the Court must apply the test announced by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See *Hare*, 74 F.3d at 644. Under this test, the Court must "determin [e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538. The test requires a court to determine whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (citing cases).

In order to determine whether the condition is a punishment, and therefore unconstitutional, the court must determine whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. If it is, the condition or restriction does not amount to unconstitutional "punishment." *Id.* "Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* As is shown more fully below, none of plaintiff's conditions of confinement claims have been shown to be arbitrary or purposeless or unrelated to legitimate goals; at worst, plaintiff has been inconvenienced by the conditions complained of, but not subjected to punishment.

**a. Under Staffing – Security and Supervision** – Plaintiff complains of a shortage of guards to supervise the inmates – he reckons that the ratio is one guard for every 100 inmates.

14

As a result, he argues, inmates are exposed to inmate on inmate violence and extortion. He also complained that the ratio of white and African American inmates subjects members of the "... Caucasian race ... to great (numbers) amounts of extortion, etc."

Of course, overcrowded conditions can, in some instances, be violative of the Constitution. *Bell*, 441 U.S. at 542, 99 S.Ct. at 1875. In order to determine whether "overcrowding" amounts to a constitutional violation, the court must examine "... the length of time an individual detainee must spend in a confined area both ultimately and on a daily basis, and the adequacy of the given sleeping space." See *id.* at 543, 99 S.Ct. at 1876.  Here, plaintiff does not allege overcrowding sufficient to establish a Constitutional claim.

Indeed, plaintiff's main complaint is not overcrowding, but rather understaffing, and the he makes only generalized and conclusory allegations that the defendants have not provided for his safety by failing to employ the staff to prisoner ratio required by a federal judge in Texas in a remedial decree issued in 1980. See  *Ruiz v. Estelle*, 503 F.Supp. 1265 (S.D. Tex. 1980), aff'd in part, vacated in part, 679 F.2d 1115 (5th Cir.), amended in part, 688 F.2d 266 (1982).  Plaintiff is apparently unaware that the Fifth Circuit Court of Appeals subsequently stayed the prisoner to staff ratios of 6:1 and 8:1 mandated by Judge Justice. See *Ruiz v. McKaskle*, 724 F.2d 1149, 1151 (5th Cir.1984). In any event, of course, the *Ruiz* decree did not apply to Louisiana corrections facilities, therefore this plaintiff does not have an independent basis for a civil rights lawsuit based on the remedial decree issued in that lawsuit. *Green v. McKaskle*, 770 F.2d 445, 446-47 (5th Cir.1985).  The Fifth Circuit has held that a prisoner's lawsuit attempting to enforce the orders issued in the *Ruiz* lawsuit was frivolous. *Sanders v. Johnson*, 265 F.3d 1059, 2001 WL 872796 (5th Cir.2001) (unpublished).

**b. Health Concerns** – Plaintiff complains of the presence of black mold in living areas, eating areas, and shower areas and that food trays are placed too close to the areas where inmates urinate. Plaintiff also complains that the inmates' food is "grossly handled" because servers are not required to wear hair nets or gloves. He complains that food is served cold and that inmate servers are not screened for contagious diseases. Rather than punitive, the conditions about which plaintiff complains appear to rise to no more than "a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 n. 21; see also *Hamilton v. Lyons*, 74 F.3d 99, 106-07 (5th Cir.1996)(affirming dismissal of conditions of confinement claim as frivolous); *Callicutt v. Panola County Jail*, 200 F.3d 816 (5th Cir. 1999).

**c. Classification of Inmates and Staff Training**– Plaintiff argues that upon arrival, all inmates should be medically evaluated and those inmates medically assigned lower bunk status should be able to rely on corrections officers to enforce the assignment. Plaintiff implies that staff are not properly trained and argues that this allegation is established by virtue of the "fact" that only 20 inmates of the hundreds confined at OPCC are provided their true bunk assignment. Again, plaintiff has not demonstrated that the complained of circumstances are the result of a punitive policy and his argument raises no more than a *de minimis* imposition. *Bell*, 441 U.S. at 539 n. 21

**d. Clothing** – Plaintiff complains that 99% of the inmate population are assigned "ill fitting clothes" which can cause serious medical problems. He complains that oversized trousers can cause the wearer to trip. He also complains that OPCC refuses to supply briefs and he, like all other inmates, must wear boxer shorts for underwear. Plaintiff also complains that inmates' clothing is not properly washed and are stained when returned, and that the current practice of

16

laundering sheets often results in the inmates having nothing to sleep on for a night. He also complains that socks have holes and the towels are not absorbent.

Jail officials must provide "humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, ... medical care," and hygiene. *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir.1999).  Once again, plaintiff has not demonstrated that the complained of circumstances are the result of a punitive policy;  his argument raises no more than a *de minimis*  imposition – an inconvenience, not punishment –  and therefore is frivolous.  *Bell*, 441 U.S. at 539 n. 21

**5. Religion** – Finally, plaintiff complains that he and others have been denied the right to receive religious material such as Bibles, books, and magazines;  that Warden Newcomer allows Pentecostalists  and other Christian "sects" to proselytize inmates in the dormitory's  common day room; and,  that shortly after his arrival at OPCC, his religious pendant – a gift from his grandfather – was confiscated.

In analyzing such claims, the court is obliged to make an inquiry as to whether the actions taken by the defendants had more than a *de minimis* impact on the free exercise rights of the detainee. Put another way, the Court must determine whether defendants' acts or policies placed a substantial burden on the detainee's right to freely exercise his religion, or merely imposed an inconvenience and thereby did not make it impossible for him to exercise his religion freely. *Omar v. Casterline*, 414 F. Supp.2d 582, 593 (W.D. La 2006); see also the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. at §2000cc-1(a)  which provides in part, that "[n]o government shall impose a substantial burden on the religious exercise of a person ... confined to an institution ... even if the burden results from a rule of

17

general applicability, unless the government demonstrates that imposition of the burden on that

person – (1) is in furtherance of a compelling governmental interest; and (2) is the least

restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc - 1(a).

Thus, in order to state a claim under either the jurisprudence or pursuant to RLUIPA, the

plaintiff must show that the challenged government action placed a substantial burden on the

exercise of religion. While the statute does not define "substantial burden," the Fifth Circuit has

defined the phrase as follows in the context of the RLUIPA, "... a government action or

regulation creates a 'substantial burden' on a religious exercise <u>if it truly pressures the adherent</u>

<u>to significantly modify his religious behavior and significantly violate his religious beliefs</u>."

*Adkins v. Kaspar*, 393 F.3d 559, 569-70 (5th Cir.2004). Whether the government action or

regulation imposes a substantial burden on an adherent's exercise requires a case-by-case,

fact-specific inquiry. *Id.*  None of the acts described above created a substantial burden because

none forced plaintiff to significantly modify his religious behavior.

*6.* **Prayer for Relief –** Plaintiff prays for injunctive relief – injunctions directing the

defendants to cease the practices complained of above and to direct the defendants to institute

suggested reforms.[1] He also prays for compensatory damages for "... emotional, mental distress,

---

[1] Plaintiff seeks very specific orders, including, but not limited to a protective order prohibiting the defendants from retaliating against him; and injunctions prohibiting out side church groups from proselytizing in the prison; ordering the Warden to provide copies of the OCC Rules and Regulations to all prisoners; directing the defendants to promulgate rules concerning incoming and outgoing mail;  directing the defendants to take control of the TV's from inmates; ordering that all inmates sleep in their assigned bunks; ordering the defendants to resolve the overcrowding issue by either reducing the inmate population or hiring more guards until an inmate to guard ration of 5:1 is established; ordering the defendants to obtain recorded statements from inmates who fight and thereafter press the appropriate criminal charges against the malefactors; ordering the defendants to submit to the court as evidence all letters, books, pictures and records that have been denied to him by the mail policy; ordering the placement of grievance boxes so that inmates may remain anonymous when filing grievances; ordering the defendants to implement a plan to reduce inmate on inmate assaults; ordering the defendants to refrain from denying inmates access to the courts; ordering the defendants to provide a suitable place for inmates to work on legal matters; ordering the defendants to provide for "special needs" inmates;  ordering the defendants to stop serving food around

18

as well as pain and suffering..."

With regard to plaintiff's claims for injunctive relief, plaintiff should be aware that the federal courts are reluctant to interfere in these aspects of prison administration.  *Humphrey v. Layton*, 58 F.3d 636, 1995 WL 371021, at *1 n. 5 (5th Cir. Jun.1, 1995). The day-to-day operations of prisons is best left to the expertise of corrections professionals.

Finally, with regard to plaintiff's request for compensatory damages for emotional, mental distress and pain and suffering, plaintiff is not entitled to such relief.  Title 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).  The "physical injury" required by § 1997e(e) must be more than *de minimis*  but need not be significant.  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997)

Plaintiff has alleges no physical injury and the undersigned can imagine no such injury resulting from the facts thus far alleged. Since plaintiff has alleged no physical injury resulting from the actions of the defendant, his claim for monetary damages as compensation for mental anguish is legally without merit and subject to dismissal as frivolous.

### 7. Conclusion and Recommendation

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in

---

the toilet areas; and,  ordering the defendants to eliminate the black mold.

accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, December 21, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

20